## DOWNIE *v.* DOWNIE.
### BISSELL and others *v.* DOWNIE and others.

*(Circuit Court, D. Indiana. ——, 1880.)*

1. WILL—CONSTRUCTION—LIFE ESTATE—POWER TO SELL IN FEE.—A will contained the following clause: "I give and devise to my honored mother, Melissa E. Downey, all my property and estate, both real and personal, to hold and enjoy the same during her life, with full power to sell the same, or any part thereof, and to appropriate the proceeds to her own use and benefit; and all deeds and conveyances of real estate by her made shall pass a title in fee to the purchasers, it being my will that she shall enjoy the same as though it were devised to her in fee. Should my mother die first, then, and in that case, I devise all the remainder of my estate to Charles Lindley Downey. After the death of my mother, I devise all of the said estate to my half-brother, Charles Lindley Downey." *Held*, that Mrs. Downey had an estate for life in the property devised, with the power under the terms of the will to dispose of it for the purposes named.

2. SAME—SAME—POWER TO MORTGAGE.—*Held*, further, that such power did not, in the first instance, include a power to mortgage.

In Equity. Demurrer to Bill.

*Herod & Winter*, for plaintiffs.

*Harrison, Hines & Miller*, for defendants.

DRUMMOND, C. J.   The plaintiff filed a bill for the purpose of quieting his title to certain tracts of land which he claimed under the will of Alanson G. Stevens; and George P. Bissell, one of the defendants, having advanced a large sum of money to Mrs. Downie, also a devisee under the same will, the latter of whom had executed mortgages to him for the purpose of securing the sum advanced. A bill in the nature of a cross-bill is filed by Bissell for the purpose of foreclosing the mortgages, or one of them, if only one of them shall be considered as valid. And the question arising in the case is under the will made by Stevens. So far as it is necessary to consider it for the purpose of deciding the matter in controversy here, the will is as follows:

"I give and devise to my honored mother, Melissa E. Downie, all my property and estate, both real and personal, to hold and enjoy the same during her life, with full power to sell the same, or any part thereof, and to appropriate the proceeds to her own use and benefit; and all deeds and con-

veyances of real estate by her made shall pass a title in fee·
to the purchasers, it being my will that she shall enjoy the
same as though it were devised to her in fee. Should my
mother die first, then, and in that case, I devise all the re-
mainder of my estate to Charles Lindley Downie, (the plain-·
tiff in the original suit.) After the death of my mother, I
devise all of the said estate to my half-brother, Charles Lind-
ley Downie; and should he die before attaining the age of 21
years," then the property is devised to other parties.

The first question is whether Mrs. Downie, the devisee
under this will, had an estate for life in the property devised,
or an estate in fee. I think she had an estate for life only,
with the power under the terms of the will to dispose of it·
for the purposes named; and that if the property was not
sold, as was provided for in the will, whatever should remain
after her death should become the property of his half-brother,
Charles Lindley Downie. Of course, the matter in contro-
versy turns upon the question whether or not the power
authorized the mortgage of the property merely. In the first
place—to analyze the language of the will—he devised all
his property to Mrs. Downie, his mother, during her life. If·
it had stopped there it would clearly be nothing but a life
estate. He then declares that, having devised it to her for
life, she shall have full power to sell the same, or any part
thereof, and appropriate the proceeds to her own use and
benefit. But, lest there might be some ambiguity about that·
language, he proceeds to render his meaning clear by declar-
ing that all deeds and conveyances of real estate by her made,.
under this full power to sell, shall pass a title in fee to the·
purchaser. That renders it clear that his intention was, in
giving her power to sell, not to sell merely during her life
the life estate which he had previously given her, but to
sell in such a way that the absolute fee-simple in the land
would be passed. The deeds and conveyances which were
to be made under this power to sell were, in the language
of the will, to "pass a title in fee to the purchaser." Does
the language following that which has already been cited
enlarge the scope of that which precedes it, it being mentioned.

in the will that she shall enjoy the same as though it were devised to her in fee? The first observation to be made on this language is that she is to have the enjoyment of it as though it were devised to her in fee; and how was she to have the enjoyment of it as though it were devised to her in fee? It seems to me, clearly, by executing the power which has already been conferred upon her, viz.: by selling the land, and, when sold, that the deeds and conveyances shall pass a title in fee to the purchaser. In that way she has the right to appropriate the proceeds to her use and benefit as though it were devised to her in fee. It has been assumed by the counsel on both sides that the language which follows that last cited means that, in case his mother died before he did, the remainder of the estate was to go to Charles Lindley Downie. I am not so clear that that is what this language means. "Should my mother die first, then, and in that case, I devise all the remainder of my estate to Charles Lindley Downey."

There may be, I think, great force in the position that it includes not only the case of the death of his mother before his own death, but also the death of his mother before the death of Charles Lindley Downie, he surviving her. In no other way can we give any meaning to the words, "all the remainder of my estate." I do not think it is material, so far as the question now before the court is concerned, whether one or the other be the true construction of this last clause of the first item of the will. I only refer to it for the purpose of showing what were the intentions of the testator—that he meant to provide not only for his mother, giving her full power over the property to sell the same during her life, but, also, if any remained unsold and unused by her, that it should go to the benefit of Charles Lindley Downie. And that is emphasized by the first clause in the second item of the will: "After the death of my mother, I devise all of the said estate to my half-brother, Charles Lindley Downey."

It is impossible, I may add, to give any effect to this last clause of the will, upon any other assumption than that the mother had only a life estate, with the power to sell as already

declared.   Then, did this give the power to mortgage the estate?  Not in terms.   It must be borne in mind that in Indiana a mortgage does not convey the land, but is only a security.   I do not say that under no circumstances could Mrs. Downie mortgage any portion of this property.   It seems to me that under certain circumstances the court might hold, for the purpose of giving effect to the language of this will, that she might have power to do so.   Even conceding that the language of the will restricted her to the sale of the property, and did not expressly give the power to mortgage, on the principle that the general will of the testator should prevail rather than the particular will,—that the main object he had in view, which was to provide for the support of his mother, should be carried into effect,—a court of equity might so hold.   But, according to the view which I take of the true construction of this will, the bill as it now stands is demurrable, and the demurrer must be sustained.   It does not appear by the allegations of the bill that there was anything more than a mere loan of the money to Mrs. Downie, and a mortgage taken for its security.   I hold that the bald statement upon its face is not a proper execution of the power contained in this will, and therefore that the demurrer to the bill must be sustained.

There may be a question whether the bill is amendable under the facts, but that point may be reserved.   In taking the view which I do of the meaning of this will, it seems to me I carry out the principle adopted by Lord St. Leonards in the case of *Stoughill* v. *Anstey*, 1 De Gex, M. & G. 634.

It is said that in this bill it is alleged that the money was advanced to Thomas Cottrell and Melissa E. Downie.   This is so, I believe.   Whether or not, consistently with that statement, the bill can be amended, may be questioned; but I shall sustain the demurrer, with leave to the plaintiff to amend, and it is desirable that the real facts which actually exist in the case may be presented upon the record, so that the court may pass upon them, under this clause of the will, and determine whether or not Mrs. Downie had the right to make the mortgage.

I have no doubt of this: Assuming she had the right to mortgage the property, in order to effectuate the general purposes of the will as for her maintenance, if an imperfect mortgage or security were given, she had the right to perfect it, and make it a complete mortgage. If there was any error, omission, or imperfection in the first mortgage, it could be removed by a second.